Edwards, Ch. J.
delivered die following opinion of the court: — In the year 1786, James Harrod, the ancestor of the defendant, exhibited his bill in the supreme court for the district of Kentucky, against John Crow, the ancestor of the plaintiffs ; to have relief against the elder grant, obtained by Crow, for the land in controversy. Harrod sets forth the circumstances of his purchase from Thomas Harrod, and the assignment of the plat and certificate of survey, made on Thomas Harrod’s certificate, obtained from the commissioners on the 28th of October 1779, which certificate is as follows :
Thomas Harrod, by James Harrod, this day claimed a right to a settlement,» and pre-emption to a tract of land, lying on a sinking spring, joining the N. W. side of James Brown’s land, by improving the same, and raising a crop of corn in the country, in the year 1776 : Satisfactory proof being made to the court, they are of opinion, that the said Thomas Harrod has a right to a settlement of 400 acres of land, including the said improvement, and a pre-emption of 200 acres of land adjoining ; and that a certificate issue for the same, he declining to take the remainder of his pre-emption.”
Which certificate was entered with the surveyor, on. the 11th. November 1779, as follows: “Thomas Har-rod enters 400 acres of land, by virtue of a certificate for settlement, lying on a sinking spring, the N. W. side of James Brown’s land.”
James Brown, had, on the same day, and previous to. Harrod, obtained from the commissioners, a certificate of his right to a. settlement, and pre-emption to a tract of land, lying on Clark’’s run., about a mile, or a mile and 4 half, “ above Claris station, by improving the same, in the year 1774, and raising a crop of corn ®n the premises, in 1776 the settlement of 400 acres, including the §aid improvement, and the pre-emption of 1000 acres adjoining. Brown, on the 11th of November 1779, entered his 400 acres, by virtue of his certificate for settlement, “lying on Clark’s run, about a mile ora mile and, a half, above Clark’s station.”
Crow’s claim was founded on a village right, granted to him by the commissioners on the 26th of April 1780. The bill charges this claim to have been surveyed contrary to the entry thereof; and, that otherwise, there would not have been an interference with the land *437 0Í the complainant. As the location of Crow cannot be sustained (by the evidence in this cause) as a claim to any ?>art of the land in controversy, it will be useless to take urther notice thereof. Crow, or those claiming under him, must rest the defence upon the acquisition of the elder legal title. The answer of Crow was put in as early as 1787, which may account for, and be an apology for some of the positions assumed as a defence, several of Which need not be mentioned.
Directions for furveyingan entry which calla to adjoin the N. W. fide of another entry, and to include a fpring,&c.when the other entry prefents a N. W, corner, and not a N. W. fide.
The answer does not question the notoriety of the objects called for in the entry of Harrod ; expressly admits the identity of the spring and improvement, for which the certificate was granted ; and admits the derivation of title, stated in the bill; and insists, that as the complainant had not caveated Crow’s claim, he ought to be barred against relief in equity.
Ini797, the suit had been previously revived, in the name of the heir of Harrod, against the heirs of Crow ; and by an amended bill, the claim of Harrod was charged to be of superior dignity to Crow’s, which was also charged as defective, for want of description and identifying calls, either in the certificate granted by the commissioners, or in the entries with the surveyor, as required by law, and afforded by the situation of the land, and its neighborhood.
To this amendment, an answer was filed ; not questioning the notoriety of the objects of description in the complainant’s entries, nor the identity thereof ; but sets up as defence, that Harrod, the ancestorof the complainant, agreed to give 1000 or 1200 acres of land, to Langford, in exchange for the 400 acres in the bill mentioned ; that the bonds for that consideration, had been assigned by Langford, to the ancestor of the defendants ; find by him pledged to William Warren and James Wilson : it is requested that they may be ordered to produce those bonds. And-the answer insists, that as Har-rod had no land of the description called for in those bonds, the exchange was procured by fraud, and ought not to avail. To this, the answer of Harrod’s heir, was filed, upon oath, as required by the defendants.
One of the bonds is for 1000 acres of land, and bears date in November 1785, and is assigned to Crow with-put date ; the other for 200 acres, bears date in March 1790, and is also assigned to Crow without date.
See JaJptr & a-tbers vs. Quarles fifi
These bonds were produced in court by William M’Dowell, for Charles Ford, with a reserve that they were only to be copied. The answer of the defendants, states the purchase of those bonds to have been made subsequent to the commencement of the suit.
Upon the hearing of the cause, the court decreed in favor of the complainant, from which the heirs of Crow appealed to this court.
So much of the defence set up in the answer, as respects the omission to caveat, was properly abandoned in argument.* Its appearance can only be accounted lor, by the period at which that answer was made ; being precedent-to the multiplicity of suits since decided, in which the objection, if it had been one, must have been apparent in the record, and yet passed in silence as, unworthy of notice.
Whoever is acquainted with the history of the claims to land, and will candidly review the natural and political history of this country, must own that the want of a caveat cannot reasonably be charged as a neglect. If, in equal circumstances, the neglect to enter a caveat-, could be considered as equivalent to a neglect to make defence in a trial actually had at law ; yet the times heretofore, and the general situation of the good people of' this district, would imperiously demand that such cases, should be excepted.†
The second defence to be considered, is the assignments of Harrod’s bonds to Crow. From the date of these bonds, together with the time at which the trans-, fers are stated to have been made to Crow, it appears the bonds were only assignable in equity. The defendants below, show no title in equity to the bonds, but admit they were pledged by their ancestor ; they do not aver the pledges have been redeemed ; but the contrary presumption must be indulged, from their being out of possession of those bonds ; and from the circumstances under which they were exhibited. But suppose a case was made out, which would induce a court of equity to say, that Harrod’s bonds to Langford, should attach, *439 upon the land given for those bonds, as an equitable lien, for a satisfaction of them ; yet the lien must be only coextensive with the demand, and not as concluding the right of Harrod, or his representative. But the pledge for satisfaction, ought to follow the demand; and although Crow once had those bonds, yet this court cannot deprive Warren, Wilson, or Ford, of their pledges, when they are not charged as wrongful detainers of those bonds, and are not parties to this suit.
But neither fraud upon Langford, nor equitable lien upon the land in dispute, is made out by the appellants. If they were entitled to a satisfaction of those bonds, there is nothing to show that the appellee has been in default, so as to induce this court to decree a money compensation. The appellee states her readinessto comply with the one bond ; and that after reasonable request, she would have complied with the other; but that no request was ever made, and none is made out in evidence.
The appellee’s ancestor was the assignee of the plat and certificate of survey, which was assignable bylaw ; this would have enabled the ancestor to have perfected his inceptive, inchoate, legal title ; but that the elder legal title, held by Crow, under a distinct conflicting claim, stood in the way. The bonds of Harrod were purchased up, after the suit was commenced ; not for the purpose of getting the Green river lands; but, as now wishfed, to set-off against the 400 acres. We cannot make bargains, and exchanges, upon such terms as the answers of the appellants ask.
It now remains to inquire how far the elder title alone, is a protection against Harrod’s 400 acres, as entered;
It has been said, in argument, that the objects called for in Harrod’s entry, as well those used for general description, as for precise location, want notoriety. There can be no good description, or sufficient location, without reference to some object which is notorious. General directions, by allusion to subjects unknown, can aid no more than precise locality, by obscure allusions ; even an exact course, and a short, exact distance, will give no aid, if the place of departure, upon that course and distance, is not understood. Notoriety ought not to be dispensed with, where it has been put in issue. In the case of Myers vs. Speed, decided as early as 1795, die court said notoriety had never been dispensed with. *440 where it had been máde a question; How jnáde a ques*tion ? By argument only, in the appellate court* or by the pleadings which direct and govern the parties in making out their proofs ? Surely by that which, expressly or by necessary implication, apprises the parties of the point in time, and gives them an opportunity of meeting it by evidence. That which is agreed by the pleadings' need not be proven.
In the year 1800, when the amended answer was put in, the doctrine of notoriety was not new. The complainant had charged, in 1797, that the defendants’ claim was defective, for want of description. If the defendants had thought it could avail them, they might have retorted the charge upon the claim of Harrod ; but they have chosen to rest their defence upon other grounds* and without a suggestion that the call for the sinking spring, or Brown’s land, was vague* indescriptive or uncertain ; but making a plain admission that they were sufficiently known.
Whether we are to infer, that by admitting the plat in the casé of Brown and Croxv’s heirs as evidence, the parties intended to admit, that the objects were correctly represented on that plat; or, that we are to suppose the parties Intended that the erroneous plat in this cause* ivas to be corrected by reference to another erroneous plat, are questions which require no solution.*
We have no hesitation in saying, that the disputes about Harrod’s improvement, at the sinking spring ; and obtrusion upon the company of improvers, in that neighborhood, as detailed by the different witnesses ; with the other concomitant circumstances ; amount to evidence of notoriety of Harrod’s improvement; the sinking spring* and Brown’s land, as called for in his certificate ; more satisfactory than if the same number of witnesses had sworn, in so many words, that they were notorious* without giving a detail of the circumstances which rendered them so.
See the <*⅛ f'T"5' i -.o — and Me. rmutbervs.Hitt ^r^ec‘
Seeaifcc^g m- & _/⅞*«.«/ rLng, ft|iterm 1808, here*
See the cafe &*•>'■• f*»* m. Pr.Dec.
It remains to inquire, how Harrod’s cláim shqpld Have been surveyed, so as to comport with his location,
The pre-emption appendant to Brown’s settlement, was not his land before the entry upon the pre-emption warrant; the mention made in the certificate of the commissioners, is no more than a note oí the quantity which the party has a right to buy in preference to others. When his location upon the pre-emption warrant was made with the surveyor, then, and not before, it must be noticed as a part of his land. The resilience of such locations, so as to draw after them previous entries, cannot be admitted.
James Brown’s settlement of 400 acres, therefore, is to be taken as the land which Harrod’s location is to adjoin.. Brown’s 400 ácres must be surveyed in a square, with lines to the cardinal points, with his spring and improvement at the intersection of the diagonals. . ,
Harrod’s 400 acres forsettlement, must adjoin Brown’s land, thus surveyed, by beginning at equal distances from the north-west córner, and taken üpon said Brown’s northern ánd western boundaries, so that a fight line between those equidistant points, shall be equal in length tó one line Of a square whose area is 400 acres ; from these points, so taken, extend parallel .lines for the boundaries of the survey, so ás to exclude the sinking spring at equal distances from each projecting line, and so far as that a line at right angles to sáid parallel extending lines; shall include the quantity. - .
The appellees have the better equitable claim to so much land lying within the actual .survey; as assigned to their ancestor; which shall fall within Harrod’s location, when surveyed ás before directed ; and for that quantity, they are to have a deed of release and transfer from the appellants, of their legal title, with warranty only against those claiming, or to claim under, by, or thhoiigh them.
It appears that the decree of the circuit court of Lincoln; (to whose jurisdiction this cause had been assigned by law) does not comport with this opinion, as to thé manner of surveying Harrod’s. claim.
Wherefore, it is decreed and ordered, that the decree of the Lincoln circuit courtj herein pronounced, be annulled, and it is hereby set aside ; the cause is remand ded to the said circuit court, with directions to enter a *442 decree'in favor of the said heir of james Hárrod, the present appellee, against the appellants,, in conformity with this opinion ; to be performed by the; said- infants, respectively, within six monthsafter their full age, unless? they shall, within that time, shew cause against the- decree ; and that such proceedings may be had, as shall be necessary to carry this decree into-execution ; and do equity accordingly, between the parties» Which is ordered to be certified to the said court.

 See Monroe's argument on this point, in the cafe of Bofworth vs. Maxwell ante 214.

 That the omiffion to file a caveat, and try titles at law, before the ifiuing. ©f the patent, is no bar to a fuit in chancery for the fame purpofe, after a patent jhasifi'ued, was decided by the fupreme court for the diíiriéfc of Kentucky, March 17S9, Harrod vs. Givens, Muter’s MSS. Rep. 36.

 On the trial in the inferior court, the parties agreed that the connected plat made out in the caufe, was incorrect * and, that on the hearing before this court, they would ufe the plat made out in the caufe of Crow's heirs vs. Brown, then depending in this court.
Several witfieifes fpoke of Harrod’s improvement, but none of them fa id it was notorious, or generally known $ but feveral of them detailed transactions relative to this improvement, as the fpring and improvement were claimed by two fets of locators, and created a contention betweeathem.